RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE  9 / 17 / 15

UNITED STATES DISTRICT COURT                               b
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

ANDREA C. TILLMAN,                    CIVIL ACTION
      Plaintiff                       SECTION "P"
                                      NO. 1:14-CV-01018
VERSUS

K. BRADFORD, et al.,                  JUDGE DEE D. DRELL
      Defendants                      MAGISTRATE JUDGE JAMES D. KIRK

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

It is recommended that Tillman's motion for summary judgment (Doc. 99) be denied and that a summary judgment be entered in favor of all defendants on all claims.

## Facts and Procedural History

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Andrea C. Tillman ("Tillman") on May 19, 2014, and amended on June 26, 2014 (Doc. 5) and May 19, 2015 (Doc. 84). The named defendants are K. Bradford (a case manager at Winn Correctional Center ("WCC") in Winnfield, Louisiana), Captain Bobby Toler (a corrections officer at WCC),[1] and Joanne Smith (a nurse employed at WCC) (Doc. 5).[2] Tillman contends that, while he was confined in the WCC in 2014, defendants subjected him to sexual harassment, use of excessive force, denial of medical care, and interference with his legal mail. For relief, Tillman asks for a jury trial, monetary damages

---

[1] "Bobby Toler" is also named as "Captain Toler."

[2] Tillman also named an "unknown nurse" as a defendant, but never named or served that nurse. Therefore, Tillman's action against the unknown nurse should be dismissed.

(including punitive), attorney fees, and costs (Doc. 84).

Tillman contends that, on January 20, 2014, he was sexually harassed by Bradford (not for the first time), and that his cell mate, Woods, witnessed the incident (Doc. 1). Tillman further contends that, on January 22, 2014, he was subjected to use of excessive force by Toler and Bradford, who sprayed a chemical agent into his cell, and that Smith and an unknown nurse denied him adequate medical care afterward. Tillman contends the officers did not give him and his cell mate, Woods, an opportunity to submit to restraints before spraying them with a chemical agent, and that the officers had an issue with his cell mate (Woods), but sprayed Tillman as well (Doc. 5). Tillman contends the chemical agent was released into his cell for ten to fifteen seconds (Doc. 5). Tillman contends that, as a result, his lower body suffered skin inflammation, irritation and scarring (Doc. 5). Tillman contends he asked for medical care, but was denied it by Toler, despite the fact that Toler could see Tillman's skin was irritated; Woods was taken to the infirmary (Doc. 5). Tillman contends he did not receive medical care for his burns until May 12, 2014 (Doc. 5). Tillman also contends that, on April 25, 2014, his legal mail was opened by Bradford before it was delivered to him (Doc. 1).

Defendants answered the complaints and requested a jury trial (Docs. 26, 93). Tillman filed a motion for summary judgment with a statement of undisputed facts and documentary exhibits (Doc. 99).

Defendants filed an opposition to Tillman's motion (Docs. 103), to which Tillman responded (Doc. 104). Tillman's motion is now before the court for disposition.

Law and Analysis

Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if the evidence is such

3

that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992).

Sexual Harassment

Tillman contends he was sexually harassed by Bradford on January 20, 2014. Tillman contends Bradford used explicit sexual language toward him repeatedly, but does not allege that Bradford ever touched him.

An alleged sexual assault is actionable under § 1983 when (1)

4

the assault is, objectively, sufficiently serious and (2) the involved prison official acted with a sufficiently culpable state of mind.  Legarde v. Metz, 2015 WL 3628629 (M.D.La. 2015), citing Tilley v. Gonzalez, 2010 WL 1541494, at *4 (N.D.Tex. Mar. 10, 2010) The jurisprudence is clear that "severe or repetitive sexual abuse of an inmate by a prison officer can be 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation." Boddie v. Schnieder, 105 F.3d 857, 861 (2nd Cir. 1997).  However, not all sexually-harassing actions amount to a constitutional violation afforded such protection.   Boddie, 105 F.3d at 861 (verbal harassment and fondling of inmate's genitals by prison guard, though despicable, is not sufficiently serious to establish Eighth Amendment violation); Adkins v. Rodriguez, 59 F.3d 1034, 1037 (10th Cir. 1995) (verbal sexual harassment by jailer, while outrageous and reprehensible, does not amount to a violation of the inmate's Eighth Amendment rights); Petty v. Venus Correctional Unit, 2001 WL 360868, at *2 (N.D. Tex. April 10, 2001).  A prisoner cannot recover under section 1983 for de minimis physical and/or psychological injuries.  Washington v. City of Shreveport, 2006 WL 1778756 (W.D.La. 2006)(plaintiff-inmate's allegations, that a work-release program employee fondled plaintiff once, touched her inner thigh once, asked her for sex, and made sexual remarks to her, showed her injury was de minimis).

Tillman's allegations that Bradford sexually harassed him with

explicit language are not, objectively, sufficiently serious to state an Eighth Amendment claim.  Moreover, verbal abuse of an inmate by a custodial officer does not violate an inmate's constitutional rights.  Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993), citing McFadden v. Luca, 713 F.2d 143, 146 (5th Cir.), cert. den., 464 U.S. 998, 104 S.Ct. 499 (1983).

Therefore, Tillman's motion for summary judgment should be denied and a summary judgment should be granted in favor of defendants on this issue.

Excessive Force Claim

Tillman contends Toler and Bradford used excessive force against him when they sprayed a chemical agent into his cell.

1. The Law

To state a claim for excessive force in violation of the Constitution, a plaintiff must allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need, and (3) the excessiveness of which was objectively unreasonable.  Ikerd v. Blair, 101 F.3d 430, 433-34 (5th Cir. 1996).

To prevail on an Eighth Amendment excessive force claim, a plaintiff must establish that force was not applied in a good faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm, and that he suffered an injury.  Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996).

6

In determining the subjective intent of the officer, the trier of fact must base its determination on relevant subjective factors suggestive of intent.  Some of the pertinent factors are the extent of the injury suffered, the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response. Bender v. Brumley, 1 F.3d 271, 278 (5th Cir. 1993), quoting Hudson v. McMillian, 962 F.2d 522, 523 (5th Cir. 1992).  An inmate need not demonstrate significant injury where the force used was malicious and wanton.  The core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  Bender, 1 F.3d at 278, n. 6, quoting Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 999 (1992).

The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force.  Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.  In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent

of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm. LeBlanc v. Foti, 487 F. Supp. 272, 275 (E.D.La. 1980), citing Johnson v. Glick, 481 F.2d 1028 (2d Cir. 1973), cert. den., 414 U.S. 1033, 94 S.Ct. 462 (1973).

The law of the Fifth Circuit is that, to support an Eighth Amendment excessive force claim, a prisoner must have suffered a more than de minimis physical injury from the use of force, but there is no categorical requirement that the physical injury be significant, serious, or more than minor. Gomez v. Chandler, 163 F.3d 921, 924 (5th Cir. 1999). The absence of serious injury, while relevant to the inquiry, does not preclude relief. Siglar v. Hightower, 112 F.3d 191, 193-94 (5th Cir. 1997). Also, Wilkins v. Gaddy, 559 U.S. 34 130 S.Ct. 1175, 1178-1179 (2010).

## 2. Evidence

Tillman contends in his affidavit that, on January 22, 2014, his cell mate, William Woods, began "racking down" the cell, shaking the cell doors, screaming obscenities at everyone, and overflowing the toilet (Doc. 99, Ex. 3). Tillman contends in his affidavit that Toler ordered Woods to stop his behavior, Woods complied, and Toler walked away; Toler returned about ten minutes later and, without a verbal order or warning, sprayed chemical agent into Tillman's face (Doc. 99, Ex. 3). Tillman contends in

8

his affidavit that the chemical agent also ricocheted off the cell bars and onto Tillman's face, body, and property as he lay facing the iron bars on the top bunk, and that Toler also sprayed it directly at Woods who was standing next to where Tillman lay (Doc. 99, Exs. 3, 4).

Tillman contends he immediately felt the effect of the agent (teary eyes, sneezing, skin burning and irritation, coughing, irritation of the nose and throat, sinus drip, tightness in sensation, and pain in the eyes that prevented the eyes from opening) (Doc. 99, Ex. 3).  Tillman states in his affidavit that he immediately requested medical assistance and Toler agreed to provide it, but no medical treatment was given to him (Doc. 99, Ex. 3).

Tillman contends in his affidavit that Assistant Supervisor Prince put Tillman in hand restraints while Woods was removed from the cell, then Tillman was released from the hand restraints and forced to remain in the contaminated cell and clothing while Toler escorted Woods to the infirmary (Doc. 99, Ex. 3).  Tillman contends in his affidavit that he started screaming for help; about 45 minutes later, Officer Mills responded and went to get him medical help, but returned to tell him the nurse would not go to his cell, so he would have to rinse off in the sink (Doc. 99, Ex. 3). Tillman contends he began rinsing in the sink and saw the skin on his lower body peeling, and the water made the burning sensation

worse (Doc. 99).   Tillman contends in his affidavit that other inmates tried to clean the tier and gave him a mop to clean the water from his cell (Doc. 99).   Tillman contends in his affidavit that Mills later told him that he was not able to take him to shower at that time because all of the showers were occupied (Doc. 99).

Tillman contends in an affidavit that, when Woods was escorted back to the cell, he screamed that he had a medical emergency; when Toler asked him what was wrong with his skin, Tillman responded that it was burning, and Toler told him a nurse would go and see him, but no one ever did (Doc. 99, Ex. 3).   Tillman contends in an affidavit Bradford refused to have him escorted to the infirmary and shower (Doc. 99, Ex. 4).

Tillman further contends in his affidavit that Smith was the medical staff assigned to the Cypress Unit for a use of force event, but she failed to provide Tillman with medical care after the chemical agent was used (Doc. 99, Ex. 5).   Tillman contends in an affidavit that he did not receive medical care for his injuries from the chemical agent until May 2014, and that the medical staff are still disregarding his skin injuries (Doc. 99, Ex. 6).   Tillman also filed two first-step grievances dated January 22, 2014 and January 23, 2014, in which he complained that he was denied medical care following use of the chemical agent (Doc. 99, Ex. 7).

Defendants contend in their brief and Toler shows in his

affidavit that, on January 22, 2014, Tillman's cell mate, Woods, was flooding the tier with his toilet and refused several verbal direct orders to stop.  Toler shows in his affidavit that, after he obtained permission to use a chemical agent, he sprayed a chemical agent into Woods' face in one burst that lasted one to two seconds, and Woods finally submitted to being restrained; Woods was taken to the infirmary for evaluation then taken to the shower (Doc. 72). Toler shows in his affidavit that Bradford video-taped the incident (Doc. 72).  Defendants contend that Toler used a minimal and reasonable amount of force to gain Woods' compliance, and that Bradford was simply operating the video camera in accordance with the "use of force" policy at WCC for videotaping any planned use of force (Doc. 72).  Toler states in his affidavit that Tillman was in the cell at the time Woods was sprayed with the chemical agent and was also removed from the cell and placed in the shower while the cell was being decontaminated and the water removed from the tier; however, Tillman refused both a shower and medical treatment (Doc. 72).

Toler further states in his affidavit that he did not maliciously or intentionally spray Tillman with the chemical agent (Doc. 72).  Toler states in his affidavit that, after the cell was decontaminated, Tillman and Woods were returned to the cell (Doc. 72).

Joann Smith, a licensed practical nurse employed at WCC,

11

states in an affidavit that, although she does not recall treating Woods or Tillman on January 22, 2014 after the use of a chemical agent on Woods, the policy at WCC is for inmates to be escorted to medical for evaluation, assessment and decontamination unless the inmate refuses, and the inmates are given instructions on decontamination (Doc. 72).

Daniel Marr, the Health Services Administrator for WCC, states in an affidavit that, on February 9, 2014, Tillman was treated by medical staff at WCC for an injury to his right ankle after falling on the floor of his cell; there was no mention of the January 22, 2014 chemical agent incident and there were no complaints of headaches, chest pains or skin inflammation and scars (Doc. 72; Doc. 32, pp. 113-114/216).  Marr also states in his affidavit, and the attached medical records show that, on May 12 & 16, 2014, Tillman complained that he had been illegally pepper-sprayed by Toler and was now suffering headaches, chest pains, and skin inflammation scars to his lower body.  Marr states in his affidavit that, on May 18, 2014, Tillman was evaluated by medical staff, his blood pressure was 156/96, and he was put on daily blood pressure checks for ten days (Doc. 72); it was also noted in Tillman's medical record that he had high blood pressure during medical exams before he was exposed to the chemical agent (Doc. 99, p. 41/60)).

Marr further states in his affidavit that, on May 19, 2014, Tillman made another sick call request for headaches and chest pain

12

due to the pepper spray incident of January 22, 2014 and the
medical staff responded that his complaints had already been
addressed (Doc. 72). Marr states in his affidavit that, on May 28,
2014, Tillman declared a "man down" due to chest pains in order to
receive emergency medical treatment; he was evaluated, his blood
pressure was 160/82, no distress was noted, and he was written up
for malingering (Doc. 72).

The video recording of the incident provided by defendants
shows Toler stating that Woods had racked the bars, flooded the
cell and refused to comply with Toler's orders, so Toler said he
would spray the chemical agent at Woods if he did not obey one more
direct verbal order (Doc. 72). The video shows Toler walking to
the cell and appearing to say something, then the video camera
moved away and showed only ceiling and walls (Doc. 72). When the
camera returned to the scene, Toler was facing the camera and
stating he had sprayed Woods with the chemical agent and would give
him five minutes to comply and, if he did not, he would spray the
chemical agent again. The video then moved to the cell, showed
Woods standing at the bars to be restrained, Tillman was in the top
bunk, and Toler stated that Woods had complied; Tillman then moved
from the top to the bottom bunk, coughing heavily (Doc. 72). The
video shows that Woods and Tillman were restrained, and Woods was
removed from the cell and escorted to medical (Doc. 72). The video
shows that Woods was examined in medical, then escorted to a shower

where he could wash off and was left there (Doc. 72).  The video shows that Woods was subsequently returned to the cell and Tillman was restrained while Woods was placed in the cell; Tillman does not appear to be in any distress at that point, was not screaming, and does not appear to have complained to the officers while he was on camera (Doc. 72).

The video does not show that Tillman was escorted to medical or to the shower or that he was offered the opportunity to go.

### 3. Analysis

Tillman contends defendants used excessive force against him by spraying chemical agent into his face.

First, it is clear that the pepper spray was not used against Tillman; it was used against Woods.  The video clearly shows that Tillman was in the top bunk when the pepper spray was used against Woods.  Therefore, Tillman's statement that Toler sprayed the chemical agent directly into his face is incorrect.

Second, it does not appear that Toler had a malicious intent to cause Tillman harm.  Tillman was simply in the cell when Woods misbehaved and was sprayed with a chemical agent.

Third, the video does not show Tillman in any distress when Woods was returned to the cell.  According to the video, when Woods was returned to the cell, Tillman did not, as he contends in his affidavit, scream that he had a medical emergency (Doc. 99).  Moreover, the medical records do not reflect any complaint about

14

the effects of the pepper spray until May 2014, even though Tillman was in the infirmary in February 2014 with an ankle injury and could have complained then.

Fourth, Tillman has failed to prove an injury caused by the alleged use of excessive force.  Although Tillman went to the infirmary in May 2015 complaining of the effects of the chemical agent, nothing was found.  Instead, in May 2014 Tillman was found to have elevated blood pressure (which was something he had before he was exposed to the chemical agent), and in July 2014 Tillman had an eye infection.

Finally, Toler's brief, one-time use of the chemical spray was reasonable under the circumstances, since Woods was disrupting and flooding the entire tier and had refused direct orders to desist.

Therefore, Tillman has failed to prove that Toler used excessive force against him when Toler sprayed a chemical agent at his cell mate, Woods.  Since there are no genuine issues of material fact which preclude a summary judgment in favor of defendants, Tillman's motion for summary judgment should be denied and summary judgment should be entered in favor of defendants on the excessive force issue.

Medical Care

Tillman contends that, after Toler sprayed a chemical agent into the cell on January 22, 2014, he was denied adequate medical care (Doc. 99).  Tillman contends he did not receive medical care

15

for his burns from the chemical agent until May 12, 2014 (Doc. 5).

In order to show that his medical care violated the Eighth Amendment, an inmate must allege that prison officials were deliberately indifferent to his serious medical needs.  Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind.  Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997), citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976).  Subjective recklessness, as used in the criminal law, is the appropriate test for deliberate indifference.  Norton, 122 F.3d at 291, citing Farmer v. Brennan, 511 U.S. 825, 838-40, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994).

A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Easter v. Powell, 467 F.3d 459, 464 (5th Cir. 2006), citing Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).  A prison official is deliberately indifferent to serious medical needs of prisoners if he intentionally denies or delays access to medical care.  Walker v. Butler, 967 F.2d 176, 178 (5th Cir. 1992); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987).

The lack of medical records for Tillman on January 22, 2014 indicates that Tillman was not taken to the infirmary after Toler

16

sprayed a chemical agent at Woods in their cell, and the video does not show that Tillman was taken to the infirmary or the shower. Defendants contend that Tillman refused both a shower and medical care.   The fact that Tillman did not go the infirmary with complaints about the alleged effects of the chemical spray until May 2014 indicates that Tillman did not require medical care, particularly since Tillman did not take the opportunity to complain about the chemical agent effects when he went to the infirmary in February 2014 for an ankle injury.

It is noted that Tillman's medical records show that, on September 18, 2013, Tillman complained of being dizzy and faint, that it was too hot in his cell, and his blood pressure was 145/74; Tillman was given Tylenol for his headache and told to increase his fluids (Doc. 32, pp. 130-132/216).   On December 30, 3013, Tillman complained of headaches, chest pain, fever, dizziness, coughing, loss of appetite, and his "bones hurt"; his blood pressure was 113/49 and he was prescribed cold medicine  (Doc. 32, pp. 121-123/216).   On January 8, 2014, Tillman's blood pressure was 146/92 (Doc. 32, p. 118/216), and on January 19, 2014, it was 183/81 (Doc. 32, p. 117/216).   Tillman was exposed to the chemical agent on January 22, 2014.   On January 30, 2014, Tillman asked for a different antidepressant and was prescribed Remeron (Doc. 32, p. 175/216).   In April 2014, Tillman told the mental health staff that he would no longer take Remeron (Doc. 32, p. 157/216).

17

On May 13, 2014, Tillman complained he had been pepper-sprayed by Toler on January 22, 2014, and now suffered from headaches, chest pains, and skin inflammation scars to his lower body; Tillman was examined and blood pressure checks were ordered (Doc. 32, p. 106/216).   On May 16, 2014, Tillman complained of headaches and chest pains from pepper spray since January 22, 2014; the medical staff noted that complaint had already been addressed (Doc. 32, p. 105/216).  On May 18, 2014, Tillman again complained of headaches, coughing, and some chest pain at night since he was pepper-sprayed on January 22, 2014, his blood pressure was 156/96; the blood pressure checks were continued and it was noted that Tillman's blood pressure had been elevated since before January 22, 2014 (Doc. 32, pp. 108-109/216).    Tillman's medical records show he was prescribed Lisinopril for his blood pressure in May 2014 (Doc. 32, pp. 68 & 75/216) and he had negative chest x-rays of in July 2014 (Doc. 32, p. 72/216).

On May 28, 2014, Tillman declared a "man down" for chest pains; he was found on the floor or his cell with respiratory distress but no sweating and his blood pressure was 160/82 and it was determined that nothing serious was wrong with him (Doc. 32, pp. 100-103/216).

In July 2014, Tillman complained in the mental health clinic that he was being persecuted by a corrections officer and needed counseling (Doc. 32, p. 145/216).

18

On August 19, 2014, Tillman complained of a right eye infection since August 7, due to having been punched in the eye in a fight, which caused his eye to be painful and red; Tillman's eye was irrigated and he was prescribed eye drops for redness relief (Doc. 32, pp. 66, 86, 88-89/216). When Tillman was called to the infirmary on August 25, 2014 for evaluation of his eye, he refused, stating the problem had gone away (Doc. 21, p. 87/216). On October 6, 2014, Tillman complained of blurriness in his right eye due to pepper-spray; no swelling, redness or signs of injury were noted (Doc. 32, pp. 79-80/216). On October 9, 2014, he complained that Toler punched him in his right eye on August 7, 2014, and requested medical care for a painful, burning red eye and blurry vision (Doc. 32, pp. 81-82, 88); Tillman's right eye was found to be red and puffy (Doc. 32, pp. 66, 89/216). Tillman's medical records show he complained on October 16, 2014 that his right eye vision was blurry due to having been pepper-sprayed, but that the blurriness "comes and goes" (Doc. 32, pp. 79-80/216).

It is clear that, if Tillman was suffering from side-effects from the January 22, 2014 chemical agent, he could have sought medical help before May 2014. Tillman's symptoms appear to have causes other than exposure to the chemical agent, such as high blood pressure and an eye infection.

Tillman has not proven that he had a serious medical need on January 22, 2014 for which he was denied medical care. Since there

19

are no genuine issues of material fact which preclude a summary judgment on the issue of denial of medical care, Tillman's motion for summary judgment should be denied and a summary judgment should be entered in favor of defendants on this issue.

Legal Mail

Tillman also contends that, on April 25, 2014, Bradford opened his legal mail before it was given to him.  Tillman does not allege censorship or interference with his access to the courts.

The control of prison mail is a matter of prison administration.  Brown v. Wainwright, 419 F.2d 1308 (5th Cir. 1969). The violation of a prison regulation requiring that a prisoner be present when his incoming legal mail is opened and inspected is not, by itself, a violation of a prisoner's constitutional rights. Brewer v. Wilkinson, 3 F.3d 816, 824 (5th Cir. 1993), cert. den., 510 U.S. 1123, 114 S.Ct. 1081 (1994).  Also, Singletary v. Stalder, 273 F.3d 1108 (5th Cir. 2001).

Therefore, Tillman's claim that his legal mail was opened before it was given to him is not cognizable under Section 1983. Tillman's motion for summary judgment should be denied on this issue and a summary judgment should be entered in favor of defendants.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Tillman's motion for summary judgment (Doc. 99) be DENIED, that a

SUMMARY JUDGMENT BE ENTERED IN FAVOR OF ALL DEFENDANTS ON ALL CLAIMS, and that Tillman's action be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _16th_ day of September 2015.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE